JASON HARROW (CA State Bar No. 308560)
DAVIS WRIGHT TREMAINE LLP
865 S Figueroa Street, Suite 2400
Los Angeles, California 90017
Telephone: (213) 633-6800
Facsimile: (213) 633-6899
Email: jasonharrow@dwt.com

Attorneys for HomeAway.com, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| HOMEAWAY.COM, INC.,<br><br>            Plaintiff,<br><br>   vs.<br><br>CITY OF ANAHEIM,<br><br>            Defendant. | Case No. 8:16-cv-1402<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF REGARDING ANAHEIM CITY ORDINANCE NO. 6374** |

For its complaint against the City of Anaheim, HomeAway.com, Inc. ("HomeAway") alleges:

## INTRODUCTION

1. Pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, HomeAway seeks to declare invalid and enjoin enforcement of sections 4.05.120 and 4.05.130.0103 of Anaheim Ordinance No. 6374 (the "Ordinance"),[1] which impermissibly burden speech on the Internet in violation of Section 230 of the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230, and the First and Fourteenth Amendments of the United States Constitution. Absent relief from this Court, the Ordinance will take effect on August 11, 2016.

2. Since May 2014, the City of Anaheim (the "City" or "Anaheim") has allowed owners to rent out their residential properties for short-term rentals if they satisfied certain requirements, including obtaining permits from the City. Anaheim Mun. Code §§ 4.05.100.0109, .0112. The Ordinance allows such rentals by owners who previously obtained permits or who have outstanding permit applications (at least until the City acts on the application, and thereafter, if the City grants a permit). Ordinance § 4.05.040.

3. However, while Anaheim's prior law imposed liability only on owners who violated the short-term rental law, the new Ordinance also seeks to regulate and impose penalties – civil and criminal – on "Hosting Platforms." Ordinance §§ 4.05.120.010, .020. "Hosting Platforms" are defined broadly to include websites, *i.e.*, any person or entity "that facilitates a short-term rental for an owner, and derives revenues therefrom, including without limitation booking fees, subscription charges or advertising revenues, from such facilitation." *Id.* § 4.05.030.E. The Ordinance prohibits "Hosting Platforms" from "list[ing] or advertis[ing] a short-term rental for which the city has not issued a permit" or

---

[1] A copy of the law, Ordinance No. 6374, is attached as Exhibit A.

1
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

"otherwise facilitat[ing] … the occupancy of a short-term rental if the occupancy will violate any ordinance, regulation or law of the city." *Id.* §§ 4.05.120.010, .020.

4. HomeAway operates several vacation rental websites that allow travelers to search for and rent properties from listing owners. The Ordinance infringes the free speech rights of HomeAway and its users under the CDA and the First Amendment in several respects.

5. First, the Ordinance violates Section 230 of the CDA. Designed to promote free speech and commerce on the Internet, Section 230 prohibits websites from being "treated as the publisher or speaker of any information" provided by a third party, and it expressly preempts inconsistent state laws. 47 U.S.C. §§ 230(c)(1), 230(e)(3). The Ordinance violates Section 230 because it requires Hosting Platforms to screen all third-party listings before publishing.

6. The Ordinance also violates the First and Fourteenth Amendments to the United States Constitution. The Ordinance is a content-based restriction and therefore the City bears the burden of establishing, at a minimum, that it furthers a substantial governmental interest and is narrowly tailored to achieve its purpose. The Ordinance cannot satisfy First Amendment scrutiny because, as the City has acknowledged, it already has means to effectively enforce its short-term rental laws by directly pursuing owners who violate the laws.

7. In addition, the First Amendment forbids the government from imposing criminal or civil liability on publishers for expressive content absent proof the publisher had knowledge that the specific content was illegal. Yet, the Ordinance contains no *mens rea* requirement and instead seeks to impose strict liability penalties on "Hosting Platforms," in violation of longstanding First Amendment principles.

8. Further, the Ordinance is stated in such broad and vague terms (*e.g.* "facilitate" and Hosting Platforms' obligation to ensure compliance with "any ordinance, regulation or law of the city," Ordinance §§ 4.05.030.E, 4.05.120.020),

2
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

that it fails to adequately inform websites of their obligations or what speech or other conduct is proscribed. The Ordinance is therefore unconstitutionally vague.

9. Absent relief from this Court, HomeAway and other online providers would be faced with the burden of having to review all third-party listings to try to verify that they comply with all Anaheim laws, or the Hobson's choice of instead blocking most or all listings to avoid the risk of criminal charges and civil penalties. HomeAway and its users will incur irreparable harm if the Ordinance takes effect.

## PARTIES

10. Plaintiff HomeAway.com, Inc. is a corporation organized and existing under the laws of the state of Delaware, with a principal place of business in Austin, Texas.

11. Defendant City of Anaheim is a municipality chartered under California state law.

## JURISDICTION AND VENUE

12. This Court has jurisdiction of this action under 28 U.S.C. § 1331, because HomeAway asserts claims under 42 U.S.C. § 1983 for violation of rights under the United States Constitution and federal law.

13. This Court may declare the legal rights and obligations of the parties in this action pursuant to 28 U.S.C. § 2201, because the action presents an actual case or controversy within the Court's jurisdiction.

14. Venue is proper in this Court under 28 U.S.C. § 1391, because the defendant resides and is located in this judicial district and the State of California, and because a substantial part of the events giving rise to HomeAway's claims occurred in this judicial district.

15. This action should be assigned to the Southern Division of this Court, because the action arises in and the defendant is a city in Orange County.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# FACTUAL ALLEGATIONS

## HomeAway

16. Since 2006, HomeAway has operated an online forum that allows owners to list their properties for short-term rental and allows travelers to search for and find available properties that meet their criteria.

17. HomeAway operates three short-term rental websites directed principally to users in the United States: HomeAway.com, VRBO.com, and VacationRentals.com. These websites together represent one of the largest vacation rental distribution networks in the world.

18. Through HomeAway's websites, travelers can search for fully furnished, privately owned residential properties, including homes, condominiums, villas, cabins, houseboats, and other properties that listing owners rent to the public on a nightly, weekly, or monthly basis. HomeAway's websites bring together millions of travelers seeking short-term rentals with owners of more than one million properties in all 50 states and 190 countries.

19. Owners provide the content for the listings they post on the HomeAway websites, including information about the property, amenities, and rental rates and terms. Listings are posted to the HomeAway websites almost immediately after owners provide them.

20. Travelers arrange reservations directly with listing owners. Travelers who find a property that meets their requirements may contact owners directly by phone or through form-based communication tools on HomeAway's websites. Owners decide to whom they rent, when they wish to rent, and how payments are made. Travelers pay listing owners directly or through third-party payment processors.

21. Owners pay for HomeAway's services in one of two ways. First, owners can purchase subscriptions to list their properties on HomeAway's websites for a specified period of time (*e.g.*, a year). Second, since late 2013, listing owners

have had the option of paying for listings on a pay-per-booking basis, paying a percentage of the value of a confirmed booking.

22. HomeAway users agree that "they are responsible for and agree to abide by all laws, rules, ordinances, or regulations applicable to their listings and rental of their properties, including but not limited to laws and requirements relating to taxes, credit cards, data and privacy, permits or licenses, zoning ordinances, health and safety and anti-discrimination and fair housing laws.[2]

## The Ordinance

23. On May 6, 2014, the Anaheim City Council adopted its first ordinance that regulated short-term rentals. The ordinance allowed rentals of residential properties for less than thirty days in specified zoning districts in the City if owners obtained permits from the City and complied with certain other requirements. Anaheim Ordinance No. 6299 § 4.05.100.[3] It also prohibited owners from advertising short-term rentals of unpermitted properties and required that advertisements for short-term rentals include the property's permit number. *Id.* § 4.05.040. The ordinance did not impose any requirements or liability on websites or other parties that provided platforms for short-term rentals.

24. By September 15, 2015, Anaheim had issued over 197 permits for short-term rentals to owners in the City, and 176 additional applications were pending.[4] On that date, the City adopted an ordinance that imposed a moratorium on the issuance of new permits while it further studied the regulation of short-term

---

[2] *See* HomeAway Terms and Conditions ¶ 1, https://www.homeaway.com/info/about-us/legal/terms-conditions (last visited July 6, 2016).

[3] The City later expanded the zoning districts where short-term rentals are allowed.

[4] Anaheim City Council Agenda Report of September 15, 2015 for Item #25 at 2, *available at* http://local.anaheim.net/docs_agend/questys_pub/5892/5922/5923/6448/6560/Staff%20Report6560.pdf.

rentals. *See* Anaheim Ordinance No. 6343. This ordinance also did not attempt to regulate hosting platforms or websites for short-term rental listings.

25. The City later adopted two additional ordinances that extended the moratorium on new short-term rental permits through May 3, 2017. *See* Anaheim Ordinance Nos. 6347, 6369.

26. The City has publicly stated that its enforcement of the prior short-term rental law had been "very effective" in addressing community concerns.[5] Nonetheless, after the September 15, 2015 moratorium, the City considered changing various aspects of its short-term rental regulation, including, for the first time, adding "enforcement against hosting sites." A February 23, 2016 report by the City Council staff discussed the possibility of regulating hosting sites, albeit without identifying any particular problem but rather because "[m]any cities have such a provision in their ordinance[s]."[6]

27. On June 29, 2016, the City Council passed the Ordinance at issue here, Ordinance No. 6374. The Ordinance modifies the short-term rental law to prohibit issuance of new permits, while allowing that owners who previously received permits may continue to offer their properties for short-term rentals if they request and obtain approval from the City to renew their permits. Ordinance §§ 4.05.040.080, .090. The Ordinance further provides that the City will consider and act on pending permit applications and will grant such applications subject to

---

[5] Video, City of Anaheim City Council Meeting (June 29, 2016) http://anaheim.granicus.com/MediaPlayer.php?view_id=2&clip_id=1648, 6:59–7:15.

[6] City of Anaheim Short-Term Rentals Best Practices Research, Presented to City Council on February 23, 2016 at 12, *available at* http://local.anaheim.net/docs_agend/questys_pub/10282/10312/10315/10319/10325/2.%20Summary%20Matrix%20(02_23_16%20STR%20Workshop)10325.pdf.

review of the City Planning Director and compliance with the law. *Id.* §§ 4.05.040.0704.

28. At the same time, the Ordinance adds new regulation of "Hosting Platforms." In particular, it states that "no hosting platform shall list or advertise a short-term rental for which the city has not issued a permit." Ordinance §4.05.120.010. It provides that upon "notification from the city that the city has not issued a permit for a short-term rental which is listed or advertised on the Internet web site provided or maintained by a hosting platform, the hosting platform shall discontinue and remove the listing or advertisement within ten (10) calendar days from the transmittal date of the notification." *Id.*

29. The Ordinance also provides that a Hosting Platform "shall not otherwise facilitate … the occupancy of a short-term rental if the occupancy will violate any ordinance, regulation or law of the city." *Id.* § 4.05.120.020. In addition to other unspecified city laws, this provision apparently could impose liability on Hosting Platforms if, for any owner listing, house numbers are not displayed in "contrasting colors," or owners do not enforce a "quiet time" for short-term rentals between 10:00 p.m. and 9:00 a.m., or a property does not have an exterior exit door in a bedroom if the property is rented to a "non-ambulatory" person, among many other requirements. *See, e.g., id.* §§ 4.05.100.0103, .0118

30. The Ordinance imposes criminal and civil liability and penalties on Hosting Platforms. It provides that violations may constitute a criminal misdemeanor. Ordinance § 4.05.130.020. In addition, "the city may issue and the hosting platform may receive a civil citation" for violations of the law of $500 for the first offense, $1,000 for the second offense within a 12-month period, and $2,000 for the third and subsequent offenses within a 12-month period. *Id.* § 4.05.130.0103. Further, the Ordinance provides that "[e]ach and every day, or portion thereof, that a violation of this chapter exists constitutes a separate and distinct violation for which a civil citation may be issued." *Id.* § 4.05.130.010.

7
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

31. City officials have acknowledged that the regulation of hosting platforms in the Ordinance may conflict with and be preempted by the CDA. In presenting the Ordinance to the City Council, the Council staff acknowledged that hosting platforms have "protections under various forms of federal law."[7] But, instead of removing offending provisions in light of conflicting federal law, the City Council added language to the adopted Ordinance providing that the City could choose not to enforce the provisions against Hosting Platforms if doing so would be "prohibited by any state or federal law." Ordinance § 4.05.130.013; *see also id.* § 4.05.120.030 (noting that "[t]he provisions of this section [governing hosting platforms] shall be interpreted in accordance with otherwise applicable state and federal law(s) and will not apply if determined by the city to be in violation of any such law(s)").

32. The Ordinance is scheduled to take effect August 11, 2016.

33. Absent relief from this Court, the Ordinance would impose a substantial burden on HomeAway , would restrict online listings and users' speech, or both. Given the criminal and civil penalties for Hosting Platforms under the Ordinance, HomeAway would either have to research and verify that all listings provided by third-party owners are permissible (and that all rentals of listed properties do not violate any city laws) or bar listings to avoid liability.

## CLAIMS FOR RELIEF

### CLAIM I
### VIOLATION OF AND PREEMPTION UNDER THE COMMUNICATIONS DECENCY ACT, 47 U.S.C. § 230, PURSUANT TO 42 U.S.C. § 1983

34. HomeAway incorporates all previous paragraphs as if fully set forth herein.

---

[7] Video, City of Anaheim City Council Meeting (June 29, 2016) http://anaheim.granicus.com/MediaPlayer.php?view_id=2&clip_id=1648, 19:30.

8
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

35. HomeAway is an "interactive computer service" within the meaning of 47 U.S.C. § 230, because it operates interactive websites.

36. The Ordinance violates Section 230 of the CDA, 47 U.S.C. § 230(c)(1) ,because it would impose liability on HomeAway for publishing information provided by third-parties, *i.e.*, owners listing their properties for rental through HomeAway's websites.

37. The Ordinance is a "State … law that is inconsistent with" Section 230, in direct violation of 47 U.S.C. § 230(e)(3).

38. The Ordinance violates and is preempted by Section 230, and it therefore should be enjoined and declared invalid.

## CLAIM II
## VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS, PURSUANT TO 42 U.S.C. § 1983

39. HomeAway incorporates all previous paragraphs as if fully set forth herein.

40. The Ordinance is invalid under the First and Fourteenth Amendments of the United States Constitution because it is a content-based restriction that impermissibly chills a substantial amount of protected speech and is not narrowly tailored to achieve a substantial governmental interest of the City.

41. The Ordinance is invalid under the First and Fourteenth Amendments because it purports to impose strict criminal and civil liability on websites for publishing speech without any requirement of scienter.

42. The Ordinance is invalid under the First and Fourteenth Amendments because it fails to give persons of ordinary intelligence adequate notice of what speech it proscribes and is therefore unconstitutionally vague.

## CLAIM III
## DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201

43. HomeAway incorporates all previous paragraphs as if fully set forth herein.

44. This action presents an actual case or controversy between HomeAway and the City concerning the validity and enforceability of the Ordinance.

45. Because the Ordinance violates Section 230 and the First and Fourteenth Amendments, HomeAway asks for a declaration pursuant to 28 U.S.C. § 2201 that the law is invalid and unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff HomeAway respectfully requests that the Court:

1. Declare that sections 4.05.120 and 4.05.130.0103 of Anaheim Ordinance No. 6374 violate and are preempted by 47 U.S.C. § 230, are unconstitutional under the First and Fourteenth Amendments of the United States Constitution, and are therefore invalid and unenforceable;

2. Preliminarily and permanently enjoin the City and its respective officers, agents, servants and employees, and all persons acting in concert or participation with them from taking any actions to enforce sections 4.05.120 or 4.05.130.0103 of Ordinance No. 6374;

3. Award HomeAway its reasonable costs and attorneys' fees under 42 U.S.C. § 1988; and

4. Award HomeAway such other and further relief as the Court deems just and proper.

DATED this 29th day of July, 2016.

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By:    /s/ Jason Harrow
     Jason Harrow
     865 S Figueroa Street, Suite 2400
     Los Angeles, California 90017
     Telephone: (213) 633-6800
     Facsimile: (213) 633-6899
     jasonharrow@dwt.com

*Of counsel*

     Thomas R. Burke
     Sanjay M. Nangia
     DAVIS WRIGHT TREMAINE LLP
     505 Montgomery Street, Suite 800
     San Francisco, California 94111
     Telephone: (415) 276-6500
     Facsimile: (415) 276-6599
     thomasburke@dwt.com
     sanjaynangia@dwt.com

     James C. Grant
     Ambika K. Doran
     DAVIS WRIGHT TREMAINE LLP
     1201 Third Avenue, Suite 2200
     Seattle, Washington 98101
     Telephone: (206) 757-8096
     Facsimile: (206) 757-7096
     jimgrant@dwt.com
     ambikadoran@dwt.com

Attorneys for Plaintiff HomeAway.com, Inc.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF